J-S26037-24                    2024 PA Super 202

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL ANTHONY CAHILL | : | |
| | : | |
| Appellant | : | No. 140 MDA 2024 |

Appeal from the Judgment of Sentence Entered January 11, 2024
In the Court of Common Pleas of Adams County Criminal Division at
No(s):  CP-01-CR-0001412-2022

BEFORE:  PANELLA, P.J.E., OLSON, J., and KUNSELMAN, J.

OPINION BY KUNSELMAN, J.:                    **FILED: SEPTEMBER 10, 2024**

Michael Anthony Cahill appeals from the judgment of sentence entered after he was convicted of obstructing administration of law, resisting arrest, driving under the influence (DUI), possession of a small amount of marijuana, possession of drug paraphernalia, and driving with an obscured registration plate.[1]  Police stopped him for driving with a license plate cover, after this Court's decision in **Commonwealth v. Ruffin**, 282 A.3d 796 (Pa. Super. 2022) (holding any partial license plate cover violates Section 1332 of the Vehicle Code), and before the enactment of Act 112 of 2022 (amending Section 1332 to permit some license plate frames).  We hold the trial court properly denied suppression because the police had probable cause to suspect that Cahill violated the law as it existed at the time of the stop.  Further, we

---

[1] 18 Pa.C.S. §§ 5101, 5104, 75 Pa.C.S. § 3802(d)(2), 35 P.S. § 780-113(a)(31)(i), (a)(32), and 75 Pa.C.S. § 1332(b)(3).

find the evidence sufficient to sustain Cahill's convictions for DUI and resisting arrest. Accordingly, we affirm.

This case arose from an incident on September 28, 2022, when Trooper Bradley Fornwalt of the Pennsylvania State Police stopped Cahill in Adams County, Pennsylvania. Trooper Fornwalt charged Cahill with the above offenses and three moving violations. The charges were held for court.

Cahill moved to suppress evidence from the traffic stop. The trial court held a hearing and found that Trooper Fornwalt observed Cahill driving with a license plate cover that prevented him from reading the license plate from approximately 20 feet away. The court concluded that the ensuing traffic stop was supported by probable cause that Cahill violated Section 1332(b) of the Vehicle Code in effect at the time of the stop. The court denied suppression.

The case proceeded to a non-jury trial. Trooper Fornwalt was the only witness. The trial court recounted the facts as follows:

> On September 28, 2022, at approximately 10:24 AM, Trooper Bradley Fornwalt . . . of the Pennsylvania State Police was in a marked patrol vehicle in Straban Township, Adams County, Pennsylvania. Trooper Fornwalt has approximately five years of law enforcement experience. He has received Standard Field Sobriety Test and ARIDE training. He has conducted approximately 350 DUI investigations, of which 250–280 involved marijuana.
>
> Trooper Fornwalt observed a grey Honda Accord driving with tags that he could not read because of a covering over the license plate. Trooper Fornwalt then effectuated a traffic stop [based on the obscured registration plate].
>
> [Cahill] was driving the Honda Accord and lit a cigarette as Trooper Fornwalt approached. Once the cigarette was put out, Trooper Fornwalt could smell the odor of burnt marijuana.

- 2 -

Trooper Fornwalt observed [Cahill] had red, bloodshot, and glassy eyes. [Cahill] told Trooper Fornwalt that there was marijuana in the car and that he was a medical marijuana user in Maryland, but he did not have a Pennsylvania card. There were two containers of labeled marijuana in the car, but they were not packaged properly based on Pennsylvania regulations . . . . Based on these observations, Trooper Fornwalt believed [Cahill] was under the influence of a controlled substance and ordered [Cahill] to exit the vehicle.

[Cahill] performed several Standard Field Sobriety Tests and ARIDE tests. During the Walk and Turn Test, [Cahill] started the test too soon, had an improper turn, and raised his arms on the return walk. During the One-Leg Stand Test, [Cahill] was swaying and put his foot down after 26 seconds. During the Modified Romberg Test, [Cahill] had eyelid tremors and swayed in a circular motion. During the Lack of Convergence Test, [Cahill's] left eye did not converge. Trooper Fornwalt testified that these were all indicators that [Cahill] was under the influence of a controlled substance. Additionally, [Cahill] gave consent for Trooper Fornwalt to search his vehicle, and Trooper Fornwalt found a metal grinder and a smoking device. Based on these observations, and based on his training and experience, Trooper Fornwalt believed [Cahill] was under the influence of a controlled substance to a degree rendering him incapable of safe driving. Trooper Fornwalt then placed [Cahill] under arrest for driving under the influence.

[Cahill] refused to consent to a blood draw, and he was taken to the Pennsylvania State Police Gettysburg Station. Trooper Fornwalt began the process of obtaining a search warrant, but [Cahill] kept asking to see a lawyer or see a judge. Trooper Fornwalt explained that he had to finish the search warrant first. [Cahill] was seated on a bench, handcuffed. [Cahill] began banging his head on the wall. [Cahill] hit his head hard enough that the whole wall shook and a Lieutenant a few rooms over could hear it. Several officers had to stop [Cahill] and restrain him to keep him from injuring himself. After [Cahill] was given a chance to calm down, [Cahill] refused, and it required six officers to restrain him. The officers then decided to take [Cahill] to a patrol vehicle to transport him to the prison. [Cahill] kicked his feet and flailed around. Multiple officers had to hold his arms, midsection, and feet while he was on the ground. Multiple troopers had to assist with taking [Cahill] to the patrol vehicle. One trooper had to sit in the back of the patrol vehicle with [Cahill] to hold his head still, which Trooper Fornwalt testified was not usually required.

[Cahill's] actions prevented Trooper Fornwalt from completing the process of obtaining a search warrant for a blood draw, and no blood draw was taken.

Trial Court Opinion, 2/13/24, at 1–4 (footnotes omitted).

The trial court found Cahill guilty of obstructing administration of law, resisting arrest, DUI, possession of a small amount of marijuana, possession of drug paraphernalia, and driving with an obscured registration plate and not guilty of the three moving violations. On January 11, 2024, the trial court sentenced Cahill to an aggregate term of 3 to 6 months of confinement, concurrent with 24 months of probation.

Cahill timely appealed on January 25, 2024. Cahill and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925. Cahill presents three issues for review:

> Whether the trial court erred in denying [Cahill's] Motion for Suppression of Evidence, inasmuch as Trooper Fornwalt lacked probable cause or reasonable suspicion required to initiate a traffic stop?
>
> Whether the evidence presented at trial was sufficient to prove beyond a reasonable doubt that [Cahill] was guilty of driving under the influence of a controlled substance to such an extent that he was incapable of safe driving?
>
> Whether the evidence presented at trial was sufficient to prove [Cahill's] guilt of resisting arrest beyond a reasonable doubt?

Cahill's Brief at 4 (format altered).

Cahill first challenges the denial of his motion to suppress evidence. He argues that Trooper Fornwalt used the obstructed license plate as a pretext to

stop him,[2] but the stop was based on a mistake of law and thus lacked probable cause. Specifically, Cahill claims this Court's opinion in *Ruffin* "was in error" based on subsequent legislation, so Trooper Fornwalt could not rely on our interpretation of Section 1332 to initiate a traffic stop.

We apply the following standard:

> Our review is limited to determining whether the record supports the findings of fact of the suppression court and whether the legal conclusions drawn from those findings are correct. We are bound by the factual findings of the suppression court, which are supported by the record, but we are not bound by the suppression court's legal rulings, which we review *de novo*.

*Commonwealth v. Mendoza*, 287 A.3d 457, 462 (Pa. Super. 2022) (quoting *Commonwealth v. James*, 69 A.3d 180, 186 (Pa. 2013)). Where the factual findings are not in dispute, this Court applies the same legal standard as the suppression court—here, to determine whether Trooper Fornwalt had a constitutionally sufficient basis to stop Cahill. *See id.* at 463 n.5.

A traffic stop is a "seizure" for constitutional purposes, entitling the subject of the stop to protection against unreasonable searches and seizures. *Commonwealth v. Malloy*, 257 A.3d 142, 147–48 (Pa. Super. 2021). The quantum of cause needed to stop a vehicle turns on whether the stop can "serve a stated investigatory purpose." *Id.* at 148 (quoting *Commonwealth v. Feczko*, 10 A.3d 1285, 1290 (Pa. Super. 2010) (*en banc*)). Where further investigation is needed, *e.g.*, a stop for suspected DUI, an officer needs

---

[2] Cahill's premise alone affords him no relief. Pretextual traffic stops, even for "minor" offenses, are not unlawful. *Whren v. United States*, 517 U.S. 806, 813–14 (1996); *Commonwealth v. Chase*, 960 A.2d 108, 113 (Pa. 2008).

reasonable suspicion to initiate a traffic stop. ***Commonwealth v. Walls***, 206 A.3d 537, 541 (Pa. Super. 2019). Where further investigation would provide no additional information, *e.g.*, a stop for an obscured license plate, an officer needs probable cause. ***Ruffin***, 282 A.3d at 801.

Probable cause for a search or seizure is a "practical, non-technical concept" that depends on the totality of the circumstances. ***Commonwealth v. Barr***, 266 A.3d 25, 40 (Pa. 2021) (citations omitted).

> In order for a traffic stop to be justified, a police officer must have probable cause to believe that a violation of the Vehicle Code or regulations has taken place. The officer must be able to articulate specific facts possessed by him at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in some violation of some provision of the Vehicle Code. Probable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference.

***Commonwealth v. Lindblom***, 854 A.2d 604, 607 (Pa. Super. 2004) (quoting ***Commonwealth v. Mickley***, 846 A.2d 686, 689 (Pa. Super. 2004)).

Under the United States Constitution, a traffic stop can be lawful if it is based on an officer's reasonable mistake of law. ***Heien v. North Carolina***, 574 U.S. 54, 67 (2015); ***see id.*** at 69–70 (Kagan, J., concurring) (elaborating on which mistakes of law are "reasonable"). However, as Cahill notes, Pennsylvania courts have held that a mistake of law, "reasonable or otherwise," cannot support a warrantless stop. ***Commonwealth v. Rachau***, 670 A.2d 731, 735 (Pa. Cmwlth. 1996).[3]

---

[3] Based on the disposition of this case, we do not resolve the apparent tension between ***Heien*** and ***Rachau***.

Analysis of Cahill's argument depends on the history of the relevant statute, case law, and legislation. At the time of the stop in this case, the statute at issue provided:

**(b) Obscuring plate.**--It is unlawful to display on any vehicle a registration plate which:

(1) is so dirty as to prevent the reading of the number or letters thereon at a reasonable distance;

(2) is obscured in any manner which inhibits the proper operation of an [automated enforcement or electronic toll collection system];

(3) is otherwise illegible at a reasonable distance or **is obscured in any manner**; or

(4) is obscured, covered or otherwise obstructed in a manner which inhibits the visibility of the issuing jurisdiction at a reasonable distance.

75 Pa.C.S. § 1332(b) (effective Aug. 4, 2017, through Nov. 2, 2022) (emphasis added).[4]

On August 23, 2022, this Court held as a matter of first impression that Section 1332(b)(3) "unambiguously prohibits the obstruction or concealment of **any** portion of a registration plate, including the address to our commonwealth's tourism website." **Ruffin**, 282 A.3d at 804. We explained

---

[4] Prior law also prohibited displaying an obscured registration plate. Act of April 29, 1959, P.L. 58, No. 32, § 504. Notably, the 1959 Vehicle Code defined an "Obscured Registration Plate" as one on which "the characters . . . are not legible" from 50 feet away in daylight. **Id.** § 102. The 1976 Vehicle Code did not retain this definition, providing instead: "It is unlawful to display on any vehicle a registration plate which is so dirty as to prevent the reading of the number or letters thereon at a reasonable distance or is otherwise illegible at a reasonable distance **or is obscured in any manner**." Act of June 17, 1976, P.L. 162, No. 81, § 1, *as amended*, 75 Pa.C.S. § 1332(b) (emphasis added).

that the statute "unambiguously pertains to any partial covering of a Pennsylvania license plate." *Id.* Consequently, under this Act, a police officer had probable cause to stop a vehicle that had a license plate frame obscuring the tourism website information on the bottom of the registration plate. *Id.*

On November 3, 2022, the Governor approved Act 112, which amended Section 1332(b) and added a rule of construction to allow for the use of frames around registration plates.[5] The statute now provides:

> **(b) Obscuring plate.**--It is unlawful to display on any vehicle a registration plate which:
>
>> (1) is so dirty as to prevent the reading of the number or letters thereon at a reasonable distance;
>>
>> (2) is illegible, obscured, covered or otherwise obstructed in any manner which inhibits the proper operation of [an automated enforcement or electronic toll collection system];

---

[5] The remarks of Senator Scott Martin signal the legislative intent:

> Mr. President, this amendment also includes language from my Senate Bill No. 1357, which protects Pennsylvania drivers from the recent Commonwealth Court [*sic*] decision that effectively made license plate frames illegal in Pennsylvania. That decision not only put an incredible amount of Pennsylvanians at risk for being pulled over for simply having a frame around their plates from their local car dealer or favorite sports team, but it also put an unreasonable expectation on law enforcement to consistently apply the ruling. This legislation would clarify the statute to make it clear: only the necessary identifiable information of the plate is needed to be visible. It also outright bans the use of tinted covers on license plates that have caused enforcement issues for automated plate readers and law enforcement statewide.

2022 Pa. Legislative Journal—Senate 1129 (Oct. 25, 2022).

(3) is illegible, obscured, covered or otherwise obstructed in any manner at a reasonable distance;

(4) is illegible, obscured, covered, or otherwise obstructed in any manner which inhibits the visibility of the issuing jurisdiction at a reasonable distance; or

(5) has a tinted plate cover.

**(b.1) Construction.**--Nothing under subsection (b) shall be construed to prohibit a vehicle from being affixed with a registration plate frame that minimally outlines the registration plate in such a manner that the registration plate's number and issuing jurisdiction is identifiable by an automated enforcement system under subsection (b)(2) or by law enforcement.

75 Pa.C.S. § 1332(b), (b.1). Except for the addition of subsection (b)(5), the legislature directed that the change "shall take effect immediately." Act of Nov. 3, 2022, P.L. 1734, No. 112, § 10.

We hold that a subsequent amendment to a law does not negate the existence of probable cause under the law in effect at the time of a police interaction. In determining whether to stop a suspect for violating a law, an officer can and should rely on authoritative court rulings interpreting that law. Doing so is not a mistake of law, even if the legislature later changes the law. This flows from the function of the judiciary in our system of government.

Courts possess "the power, the duty and the responsibility of interpreting . . . all legislation." *Stander v. Kelley*, 250 A.2d 474, 482 (Pa. 1969); *see* Pa. Const. art. V, § 1 (vesting "judicial power" in the courts). "In construing a statute, the court's interpretation is considered to be a declaration of the applicable law as enacted by the legislature." *Babcock & Wilcox Co. v. Workmen's Comp. Appeal Bd.*, 437 A.2d 778, 780 (Pa.

- 9 -

Cmwlth. 1981) (citation omitted). Such a decision becomes "the law of the Commonwealth" until it is overruled or the statute is amended. ***Randt v. Abex Corp.***, 671 A.2d 228, 232 n.3 (Pa. Super. 1996) (citing ***Baker v. Aetna Cas. & Sur. Co.***, 454 A.2d 1092 (Pa. Super. 1982)); ***see In re Opperman's Estate***, 179 A. 735, 736 (Pa. 1935) (holding that a court's construction of a statute "must stand, until the Legislature declares otherwise").

True, subsequent legislation can show that the legislature intends for a law to be applied differently. Courts interpreting statutes must "ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). A prompt change to the text of a statute can rebut the presumption that a court's "interpretation was in accordance with the intent of the Legislature." ***Commonwealth v. Willson Prods., Inc.***, 194 A.2d 162, 167 (Pa. 1963).

Nevertheless, legislation is generally prospective. ***See Rose Corp. v. Workers' Comp. Appeal Bd.***, 238 A.3d 551, 559 (Pa. Cmwlth. 2020) (*en banc*) ("[S]tatutes must be given prospective effect only, unless the statute includes clear language to the contrary."). Our legislature has provided: "No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S. § 1926. Notably, "new provisions [of a statute] shall be construed as effective only from the date when the amendment became effective." 1 Pa.C.S. § 1953. Therefore, if the General Assembly has not indicated that a new section of a statute should be applied retroactively, then prior decisions interpreting the statute remain valid for cases arising prior to the new section's enactment. ***See Randt***, ***supra***.

- 10 -

Here, our **Ruffin** decision interpreting Section 1332(b)(3) remained effective on the day Trooper Fornwalt stopped Cahill. When the General Assembly later added a provision to permit certain registration plate frames, 75 Pa.C.S. § 1332(b.1), it directed that the addition "shall take effect immediately." Act of Nov. 3, 2022, P.L. 1734, No. 112, § 10. The General Assembly did not manifest an intent for the provision to be retroactive, *i.e.*, to be applied prior to approval by the Governor. This Court's interpretation of the unambiguous statutory text thus remained binding, mandatory authority across the Commonwealth until the additional provision went into effect. Trooper Fornwalt made no mistake of law and properly relied on our holding to find probable cause that Cahill violated the law by displaying a registration plate with "any" covering.[6] Consequently, the traffic stop was valid, and the trial court did not err by denying suppression. Cahill's first challenge fails.

In his remaining issues, Cahill challenges the sufficiency of the evidence to sustain his convictions for DUI and resisting arrest. We apply the following standard:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

---

[6] The Commonwealth argues, independently of our holding in **Ruffin**, that Cahill's license plate cover violated Section 1332. Because **Ruffin** was the law of Pennsylvania at the time of the stop, we need not analyze this further.

- 11 -

> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Mobley*, 14 A.3d 887, 889–90 (Pa. Super. 2011) (quoting *Commonwealth v. Mollett*, 5 A.3d 291, 313 (Pa. Super. 2010)).

As to DUI, Cahill alleges that the Commonwealth failed to prove his guilt because there was no evidence of erratic driving, no chemical testing of his blood or the purported marijuana in his car, and no expert testimony that he was impaired as a result of drug use. Cahill argues that he was able to drive safely, as he was acquitted of the three moving violations.

The statutory section charged here provides:

> An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> \* \* \*
>
> (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(d)(2). This section "requires only proof that the driver was under the influence of a drug or a combination of drugs to a degree that the ability to [safely] drive is impaired." *Commonwealth v. Tarrach*, 42 A.3d 342, 345 (Pa. Super. 2012). It "does *not* require that any amount or specific

quantity of the drug be proven." ***Commonwealth v. Hutchins***, 42 A.3d 302, 307 (Pa. Super. 2012).

We recently explained that "impairment evidence should be drawn from the totality of the factual circumstances," including direct and circumstantial evidence. ***Commonwealth v. Nestor***, 314 A.3d 863, 874 (Pa. Super. 2024) (citing ***Commonwealth v. Spence***, 290 A.3d 301, 309 (Pa. Super. 2023)). A defendant's erratic driving, demeanor, and performance on field tests can support a finding of impairment. ***See, e.g.***, ***Commonwealth v. Williamson***, 962 A.2d 1200, 1204 (Pa. Super. 2008). Notably, this Court has found evidence sufficient to prove impairment despite a defendant's driving in a controlled manner, where the defendant admitted to drinking, had bloodshot eyes, answered questions inappropriately, and refused a blood test. ***E.g.***, ***Commonwealth v. Gruff***, 822 A.2d 773, 782 (Pa. Super. 2003); ***id.*** at 795– 96 (Bender, J., dissenting in part).[7]

Section 3802(d)(2) does not require expert testimony to prove that a driver's impairment was caused by drugs, although our Supreme Court acknowledged that such testimony "may be helpful, or perhaps even necessary," depending on the case. ***Commonwealth v. Griffith***, 32 A.3d 1231, 1238 (Pa. 2011). Expert testimony is necessary where there is no

---

[7] ***Gruff*** involved a provision of the Vehicle Code that prohibited driving "under the influence of alcohol to a degree which renders the person incapable of safe driving," former 75 Pa.C.S. § 3731(a)(1), the predecessor to 75 Pa.C.S. § 3802(a)(1). *A fortiori*, the quantum of evidence to prove that a defendant was **incapable** of safe driving can also prove that his ability to safely drive was **impaired**. ***Compare*** 75 Pa.C.S. § 3802(a)(1) ***with id.*** § 3802(d)(2).

"other independent evidence of impairment." ***Commonwealth v. Gause***, 164 A.3d 532, 538 (Pa. Super. 2017) (*en banc*).

The facts in ***Gause*** established the need for expert proof that a driver was impaired due to marijuana use. Because the driver promptly pulled over for police lights, provided his documents without fumbling, did not have bloodshot eyes, and did not admit to recent use of marijuana, expert testimony was needed to prove impairment. ***Id.*** However, the only evidence of marijuana impairment was an officer's testimony based on eyelid tremors. ***Id.*** at 536, 539. This Court held the testimony to be inadmissible as a lay opinion, concluded that the error was not harmless, and found the remaining evidence to be insufficient to sustain the driver's conviction under Section 3802(d)(2). ***Id.*** at 539–40.

Here, by contrast, the evidence was sufficient to prove that Cahill was driving under the influence of marijuana to a degree that impaired his ability to safely drive, without the need for expert testimony. Trooper Fornwalt observed Cahill cross the white fog line while driving, smelled burnt marijuana, and saw that Cahill had glassy, bloodshot eyes. Cahill said he was a Maryland medical marijuana patient and that there was marijuana in the car. Cahill showed signs of possible impairment during field tests by not following directions, swaying while standing, and using his arms. Trooper Fornwalt testified without objection that he believed Cahill was incapable of safe driving. This is enough to prove guilt under Section 3802(d)(2). As the trial court

reasoned, Cahill's performance on the field tests showed that Cahill "did not have the coordination needed to safely drive."

Additionally, Cahill's actions showed consciousness of guilt. When Trooper Fornwalt approached him, Cahill had a freshly lit cigarette. While Trooper Fornwalt prepared a search warrant for a blood draw, Cahill repeatedly banged his head against the wall, causing such a disturbance that the trooper never finished the warrant. The trial court could infer that Cahill knew he was impaired by marijuana when he tried to mask the smell of marijuana and prevent a blood draw that would show the presence of marijuana.

Therefore, despite Cahill's substantially controlled driving, the totality of the evidence was sufficient to establish impairment. Cahill's challenge to his DUI conviction fails.

Finally, Cahill contends that the evidence was insufficient to sustain his conviction for resisting arrest. He asserts that his arrest was unlawful and that his actions at the barracks did not injure any of the troopers who tried to control him.

The statute provides: "A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S. § 5104. This offense requires proof that a public servant was effecting a lawful arrest

or discharging a legal duty "other than arrest," which the defendant intended to prevent. *See Commonwealth v. Karl*, 476 A.2d 908, 911 (Pa. Super. 1984).[8] The Commonwealth does not need to establish actual injury. *Commonwealth v. Lyons*, 555 A.2d 920, 925 (Pa. Super. 1989). Instead, it may prove **either** that the defendant's actions created a substantial risk of serious bodily injury **or** that the defendant employed means justifying or requiring substantial force to overcome the resistance. *Id.* For example, evidence was sufficient where an arrestee tried to swim away in a creek, requiring four deputy sheriffs to subdue him. *Id.*

Here, the evidence was sufficient to sustain Cahill's conviction for resisting arrest. Trooper Fornwalt lawfully arrested Cahill on suspicion of DUI and was preparing a search warrant for a blood draw. Cahill repeatedly banged his head against the wall, ultimately requiring six officers to restrain him from kicking and flailing. When Cahill was being driven to the prison, an officer had to sit in the back of the patrol vehicle and restrain Cahill's head. The trial court could find that Cahill, who was under a lawful arrest, acted up to prevent the officers from acquiring a search warrant and transporting him to the prison. Cahill's final challenge fails.

---

[8] Notably, the phrase "discharging any other duty" does not include police investigation following an unlawful arrest. *Commonwealth v. Karl*, 476 A.2d 908, 911 (Pa. Super. 1984). Here, however, the police actions followed a lawful arrest.

Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 9/10/2024