J-A23027-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY JAMES LAVERY | : | |
| | : | |
| Appellant | : | No. 126 WDA 2025 |

Appeal from the Judgment of Sentence Entered September 19, 2024
In the Court of Common Pleas of Butler County Criminal Division at
No(s): CP-10-CR-0000833-2022

BEFORE: PANELLA, P.J.E., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED: JANUARY 12, 2026**

Timothy James Lavery appeals from the judgment of sentence entered following his convictions for driving under the influence of a controlled substance ("DUI"), careless driving, and driving while operating privilege is suspended or revoked.[1] Lavery challenges the sufficiency of the evidence supporting his conviction for DUI. We affirm.

The trial court summarized the evidence presented at Lavery's bench trial as follows.

> At the non-jury trial, Pennsylvania State Police Corporal Michael J. Lewis testified that on January 6, 2022, he was working as a patrol supervisor. He testified that he has been employed by the State Police for almost 20 years. On January 6, 2022, he was working routine patrol on northbound Route 8. He testified that he turned into the Clearview Mall at the McDonald's restaurant and that as he pulled into the mall parking lot, he observed a vehicle doing doughnuts and spinning in circles on icy, snowy

---

[1] **See** 75 Pa.C.S.A. §§ 3802(d)(2), 3714(a), and 1543(a), respectively.

roads. *N.T., Non-Jury Trial, August 26, 2024*, pgs. 4-5. Cpl. Lewis testified that he activated his lights to warn the vehicle a few times, but the vehicle continued spinning and driving in between shopping carts near the Royal King store. Cpl. Lewis tested that he conducted a traffic stop and that [Lavery] was the driver. *Id.* at 6. While waiting for a backup vehicle, the officer was checking the information on the driver and vehicle and learned that [Lavery] had a suspended driver's license. *Id.* at 7. Cpl. Lewis testified that when he contacted [Lavery], there was a strong odor of burnt marijuana emanating from the vehicle. *Id.* at 8. He also testified that [Lavery's] eyes were bloodshot, and his pupils were pinpoint. The officer asked [Lavery] to exit the vehicle and at that point, the officer determined that the strong odor of burnt marijuana was coming from [Lavery]. *Id.* Due to the cold weather conditions, Cpl. Lewis did not attempt any standard field sobriety tests except the HGN of [Lavery's] eyes which showed no reaction to light. Cpl. Lewis contacted Trooper Treadway who is a drug recognition expert. *Id.* at 9.

Cpl. Lewis testified that after conducting a vehicle search, [Lavery] was transported to the State Police barracks. At this point in the trial, the Commonwealth submitted Commonwealth's Exhibit "4" which is a certified copy of [Lavery's] PennDOT Driver's History. It was admitted without objection. The Commonwealth also submitted Commonwealth's Exhibit "1" which is the MVR video and audio of this incident. The Commonwealth played the video and audio recording for the trial court. The search of the vehicle did not reveal any marijuana. *Id.* at 15. [Lavery] refused to submit to a chemical test. *Id.* at 16.

Next, the Commonwealth called Trooper Philip Treadway. He testified that he has been employed by the State Police for a little over eight (8) years. He testified that his duties include patrol trooper, drug recognition expert and drug recognition expert instructor and Pennsylvania State Police Bureau of Patrol western regional drug recognition expert. *Id.* at 18-19. Commonwealth's Exhibit "2" is Trooper Treadway's Curriculum Vitae. It detailed the trooper's extensive training in drug recognition and impairment, with a focus on cannabis and notes that he has been recognized as an expert in several Western PA counties and in the U.S. District Court in Pittsburgh, PA. It was admitted without objection. *Id.* at 20-21. The trial court recognized Trooper Treadway as a drug recognition expert. *Id.* at 22.

Commonwealth's Exhibit "3" is Trooper Treadway's evaluation report. The drug influence evaluation is a 12-step process. The first step is the breath alcohol test which indicated no alcohol. The second step is the interview of the arresting officer. Cpl. Lewis related the he observed the odor of marijuana, bloodshot eyes, and constricted pupils. *Id.* at 25. The third step is the preliminary examination of [Lavery], questions about his general health and whether he is on any prescription medication or illegal drugs. Trooper Treadway observed a strong odor of burnt marijuana about [Lavery's] person and he had an "abnormally relaxed demeanor where he's joking and laughing throughout the evaluation." *Id.* at 26-27. Trooper Treadway noted that there are three (3) pulse checks throughout the evaluation. The next step is the eye examination. The trooper noted that [Lavery's] eyes were bloodshot which is an indicator of potential, recent cannabis usage. *Id.* at 27. Next the trooper performed the horizontal gaze nystagmus (HGN) test which did not show any indicators and then the lack of divergence test which did show indicators. *Id.* at 28.

The divided attention testing was next. For the modified Romberg balance test, [Lavery] estimated 30 when it was 24 seconds. The trooper testified that [Lavery] had difficulty following instructions throughout the testing procedure. The trooper noticed body tremors, eyelid tremors, and a circular sway throughout that test which are indicators of cannabis impairment. *Id.* The next test was the walk-and-turn test, during which [Lavery] indicated six (6) of the eight (8) validated clues of impairment. *Id.* at 29.

The next test was the one-leg stand test. The trooper testified that [Lavery] stated that he was unable to do this due to back issues. However, he did attempt to raise his left foot. This test indicated two (2) out of four (4) indicators of impairment. On the finger-to-nose-test, the trooper testified that [Lavery] had a poor perception of distance which is an indicator of cannabis usage. *Id.* at 30.

The next part of the evaluation was a check of [Lavery's] vital signs, including blood pressure, pulse check, and body temperature. The trooper testified that [Lavery's] second pulse check was above the medium at 102 beats per minute (the upper end of the range is 90). [Lavery's] "blood pressure was within the range for the systolic number and above the range for the diastolic number." *Id.*

The next test was observing the eye pupil size in three (3) different lighting conditions. The first test was observing [Lavery's] pupils in room lighting conditions as he stared at a distance. The second test is in a dark room for 90 seconds and then the lights are turned. The third test is with a red or UV light as [Lavery] stared at a distance and then again under a white light. The trooper testified that [Lavery's] pupils were constricted below which indicates potential narcotic analgesic usage. Also, there was little to no pupil reaction to light, another indication of narcotic analgesic usage. *Id.* at 31. The trooper explained that these reactions do not reflect cannabis and THC usage but that they indicate potentially other narcotics in [Lavery's] system. *Id.* at 32. The last step is to examine the oral and nasal cavities under both white and UV lights. The trooper testified that [Lavery's] tongue had a thick, yellow/green coating which indicates cannabis usage. [Lavery's] muscle tone was flaccid, not normal and no obvious injection sites were observed. His last pulse check was elevated. Next, the trooper asked [Lavery] about his recent usage of drugs or illicit substances. [Lavery] stated that he took Prednisone at 9:30 p.m. that evening and marijuana on the previous Wednesday night (the day prior). *Id.* at 33.

Trooper Treadway stated his opinion that [Lavery] was incapable of safely operating a vehicle was due to the combined effects of cannabis and a narcotic analgesic being present in his system. *Id.* After the police read the DL-26 form to [Lavery], he refused and said that he was afraid of needles, then later said that a Xanax he had taken a couple of days prior would show up in the blood test. *Id.* at 34. The trooper testified that he made the findings in his report within a reasonable degree of certainty. *Id.* at 35. Trooper Treadway's report, Commonwealth's Exhibit "3" was admitted with no objection from the defense. *Id.* at. 58.

Trial Court Opinion, filed April 17, 2025, at 2-4.

The court convicted Lavery of the above offenses. It sentenced him to 72 hours to six months' incarceration. Lavery filed post sentence motions. The court held a hearing but took no other action on the motions, which were

- 4 -

denied after 120 days by operation of law. **See** Pa.R.Crim.P. 720(B)(3)(a).

Lavery filed a timely notice of appeal.[2, 3]

Lavery raises the following issues:

I. Whether the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that [Lavery] actually drove or operated a motor vehicle while impaired and under the influence to sustain his conviction under Title 75 § 3802(d)(2).

II. Whether the Commonwealth presented sufficient evidence to sustain [Lavery's] conviction for Driving under the Influence when it relied solely upon circumstantial and unconvincing evidence of impairment.

Lavery's Br. at 4.

Both of Lavery's issues challenge the sufficiency of the evidence to sustain his DUI conviction, and he offers a single argument in support of both.

_____

[2] The clerk of courts issued an order on January 27, 2025, stating that the post-sentence motions had been denied by operation of law. **See** Pa.R.Crim.P. 720(B)(3)(c). We note that the post-sentence motions were timely filed on September 23, 2024, and 120 days later was January 21, 2025. Regardless, Lavery's notice of appeal, filed on January 29, 2025, was timely. **See** Pa.R.Crim.P. 720(A)(2) (providing defendant must file notice of appeal within 30 days of the entry of the order denying the motion by operation of law); **Commonwealth v. Davis**, 333 A.3d 731, 734 n.4 (Pa.Super. 2025) (stating, "if the court enters an untimely notice of the disposition of the post-sentence motions, and the defendant files a notice of appeal within the following 30 days, the appeal will be deemed timely"), *appeal denied*, No. 208 MAL 2025, 2025 WL 2923417 (Pa. Oct. 15, 2025).

[3] Lavery filed his concise statement of errors complained of on appeal on March 14, 2025, 38 days after the court ordered him to file it within 21 days. **See** Order, filed Feb. 4, 2025; Pa.R.A.P. 1925(b)(2)(i). However, the docket does not indicate that the court served Lavery with notice of the order, in contravention of Pa.R.Crim.P. 114(C)(2). Therefore, we will not find the statement to be untimely. **See Commonwealth v. Bush**, 197 A.3d 285, 287 (Pa.Super. 2018).

Lavery contends that in testing for impairment due to cannabis and other drugs — as opposed to alcohol — "[f]ield sobriety tests rely on subjective opinion; they are not objective, scientific observations." *Id.* at 9. He asserts Trooper Treadway admitted that he relied on his subjective evaluation to determine Lavery was under the influence, rather than a standardized, objective test for impairment. *Id.* at 11. According to Lavery, Trooper Treadway admitted on cross-examination that "there are no studies that validate the tests for alcohol impairment are equally valid for drug impairment proof"; he could not "determine what narcotic was in Lavery's system without a blood test"; the odor of marijuana does not determine impairment; and bloodshot eyes "could be because the individual is tired[.]" *Id.*

Lavery contends that even if the testing indicated some cannabis or drug use, it did not indicate any level of impairment. Lavery points out that although Trooper Treadway opined that Lavery was incapable of safe driving due to THC and narcotics usage, "he is incapable of scientifically determining any particular level of impairment" by THC, because no such measurement exists. *Id.* at 10. Lavery asserts, "The science shows that one can be impaired with low levels of THC in the system, and also show that one can be unimpaired when there are high levels of THC in the system." *Id.* at 13. Overall, Lavery argues that the circumstantial evidence of his impairment was unreliable, stating, "Nothing in any of these tests shows a certain level of impairment to prove the conclusion [Lavery] was incapable of safe driving at the time he was stopped and arrested." *Id.* at 14.

The sufficiency of the evidence is a question of law, for which "our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Spence***, 290 A.3d 301, 309 (Pa.Super. 2023) (citation omitted).

> When reviewing a challenge to the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail. This standard applies equally where the Commonwealth's evidence is circumstantial. In conducting this analysis, we may not substitute our judgment for that of the factfinder. Additionally, the Commonwealth's evidence need not preclude every possibility of innocence. The factfinder is free to believe all, part, or none of the evidence.

***Commonwealth v. Griffith***, 305 A.3d 573, 576-77 (Pa.Super. 2023) (cleaned up), *appeal denied*, 319 A.3d 503 (Pa. 2024).

Lavery was convicted under the portion of the DUI statute which provides,

> **(d) Controlled substances.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> > (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(2).

Importantly, this subsection does not require the Commonwealth to prove the defendant had taken any particular amount of any particular drug,

- 7 -

but only that the defendant operated a vehicle while under the influence of a drug or drugs, and that the drugs "impaired [the defendant's] ability to safely drive that vehicle." ***Commonwealth v. Greene***, 340 A.3d 324, 333 (Pa.Super. 2025). This determination "'should be drawn from the totality of the factual circumstances,' including direct and circumstantial evidence." ***Commonwealth v. Cahill***, 324 A.3d 516, 527 (Pa.Super. 2024) (quoting ***Commonwealth v. Nestor***, 314 A.3d 863, 874 (Pa.Super. 2024)).

The need for expert testimony to establish an offense under this subsection "must be evaluated on a case-by-case basis, taking into account not just the specific drug at issue, prescription or otherwise, but also the nature and overall strength of the Commonwealth's evidence." ***Greene***, 340 A.3d at 333 (quoting ***Commonwealth v. Griffith***, 32 A.3d 1231, 1239 (Pa. 2011)). When there is no "other evidence of impairment," expert testimony is necessary. ***Cahill***, 324 A.3d at 527 (Pa.Super. 2024) (quoting ***Commonwealth v. Gause***, 164 A.3d 532, 538 (Pa.Super. 2017) (*en banc*)). However, "[a] defendant's erratic driving, demeanor, and performance on field tests can support a finding of impairment," without expert testimony. ***Id.*** "[T]he distinct odor of burnt marijuana emanating from the person or vehicle" is a "typical and obvious" indicator of marijuana use. ***Gause***, 164 A.3d at 539. In addition, physical symptoms such as "staggering, stumbling, glassy or bloodshot eyes, and slurred speech" are "ordinary signs of intoxication discernable to a layperson." ***Id.***

Thus, for example, we found sufficient evidence to establish a conviction under Section 3802(d)(2), without expert testimony, where the defendant was speeding and narrowly avoided a rear-end collision by abruptly breaking, performed poorly on field sobriety tests, was confused and unable to complete simple tasks, had slurred speech, and smelled of PCP, and a PCP cigarette had been discovered in the vehicle. *See Greene*, 340 A.3d at 333. Similarly, we found expert testimony unnecessary to prove a violation where the defendant crossed the fog line, smelled of burnt marijuana, had glassy, bloodshot eyes, and stated he was a medical marijuana patient and had marijuana in the car. *Cahill*, 324 A.3d at 527. The defendant had also "show[n] signs of possible impairment during field tests by not following directions, swaying while standing, and using his arms," which supported the conclusion that he "did not have the coordination needed to safely drive." *Id.* at 527-28; *see also Nestor*, 314 A.3d at 875-76 (finding evidence sufficient where defendant was driving unsafely, performed poorly on field sobriety tests, was agitated, refused a blood test, had dilated eyes, eyelid tremors, twitching hands, and dry mouth, and his eyes did not constrict with bright light); *Spence*, 290 A.3d at 310 (finding evidence sufficient where defendant took officers on high-speed chase, smelled of marijuana, admitted to smoking marijuana in the hours prior to driving, and performed poorly on field sobriety tests).

In contrast, in *Gause*, we found the evidence insufficient where "the driver promptly pulled over for police lights, provided his documents without fumbling, did not have bloodshot eyes, and did not admit to recent use of

marijuana[.]" **Cahill**, 324 A.3d at 527 (citing **Gause**). The only evidence in **Gause** that the defendant was impaired had been the officer's lay opinion based on eyelid tremors, and an expert was necessary to explain whether eyelid tremors or body tremors would indicate the defendant had been under the influence of marijuana and unable to safely drive. **Id.**

Here, Lavery's sufficiency argument suffers from a fatal flaw: he did not object to Trooper Treadway's qualification as an expert. Nor did he object to the admissibility of Trooper Treadway's opinion on the basis that it was not competent. **See Commonwealth v. Ward**, 188 A.3d 1301, 1311 (Pa.Super. 2018) (citation omitted) ("While an expert's opinion need not be based on absolute certainty, an opinion based on mere possibilities is not competent evidence"). Nor did he object to its admissibility on the basis that Trooper Treadway's methodology is not "generally accepted in the relevant field." **See** Pa.R.E. 702(c).[4]

When reviewing the sufficiency of the evidence, we must consider all evidence that came before the jury, without regard to its admissibility. **Commonwealth v. Arias**, 286 A.3d 341, 350 (Pa.Super. 2022). An expert's opinion is substantive evidence, and experts may opine on the ultimate issue.

---

[4] At the hearing on Lavery's post-sentence motions, he argued that while Trooper Treadway was recognized as a drug recognition expert, "he's pretty much the one establishing the standards," and "[t]here is no scientific or medical body that certifies him." N.T., 11/18/24, at 7. However, he did not argue to the court and does not argue on appeal that the court erred in qualifying Trooper Treadway as an expert or in admitting his expert testimony and opinion.

***Commonwealth v. Pi Delta Psi, Inc.***, 211 A.3d 875, 882 (Pa.Super. 2019); ***Commonwealth v. Fuentes***, 991 A.2d 935, 944 (Pa.Super. 2010) (*en banc*). Because Trooper Treadway's opinion was admitted – which Lavery does not challenge – the jury was free to consider it. ***See Commonwealth v. Caraballo***, 325 A.3d 1025, 1030 (Pa.Super. 2024) (finding appellant waived claim that trooper's opinion that drugs caused the defendant's unsafe driving was inadmissible), *appeal denied*, 333 A.3d 1257 (Pa. 2025). As such, Trooper Treadway's expert opinion that Lavery "was incapable of safely operating a vehicle . . . due to the combined effects of cannabis and a narcotic analgesic being present in his system" was sufficient to sustain the conviction.

Moreover, Lavery's argument that the expert testimony was unreliable or unconvincing implicates the weight, rather than the sufficiency of the evidence. ***See Commonwealth v. Feucht***, 955 A.2d 377, 382 (Pa.Super. 2008); ***see also Commonwealth v. Stallworth***, 781 A.2d 110, 122 (Pa. 2001) ("Whether an expert's testimony is persuasive beyond a reasonable doubt is a matter for the jury's consideration"); ***Commonwealth v. Watts***, No. 601 EDA 2024, 2024 WL 5039567, at *7 (Pa.Super. filed Dec. 9, 2024) (unpublished mem.) (noting that the comment to Pa.R.E. 702 provides "that when a qualified exert testifies, the weight of his testimony is for the trier of fact to determine"), *appeal denied*, 340 A.3d 976 (Pa. 2025). Lavery does not raise a weight of the evidence claim, and the reliability of the evidence does not affect our sufficiency analysis. ***See Feucht***, 955 A.2d at 382.

Finally, we conclude that even without Trooper Treadway's expert opinion, viewed in the light most favorable to the Commonwealth, the evidence was sufficient to support the conviction based on the totality of the circumstances and the facts that were within the ordinary knowledge of a layperson. Lavery chose to spin his vehicle in circles on an icy, snowy night, on commercial property. Lavery smelled of burnt marijuana, and his eyes were bloodshot. He refused a blood test. He exhibited an "abnormally relaxed demeanor" and had difficulty following instructions. Overall, he performed poorly on field sobriety tests. Of particular note, he had "a circular sway" and "a poor perception of distance." In combination, this circumstantial evidence was sufficient for the factfinder to determine, beyond a reasonable doubt, that Lavery was impaired by drugs to such an extent that he was unable to safely drive.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/12/2026