J-A07023-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RAYMOND N. FOSTER | : | |
| | : | |
| Appellant | : | No. 998 MDA 2024 |

Appeal from the Judgment of Sentence Entered June 13, 2024
In the Court of Common Pleas of Perry County Criminal Division at
No(s): CP-50-CR-0000107-2023

BEFORE: BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 10, 2025**

Appellant, Raymond N. Foster, appeals from the June 13, 2024 judgment of sentence entered in the Court of Common Pleas of Perry County after a jury convicted him of two counts of aggravated assault – bodily injury to designated individual, and one count each of obstructing administration of law or other government function, resisting arrest or other law enforcement, and criminal trespass – defiant trespasser.[1]  The trial court imposed an aggregate sentence of 2 years and 4 months to 6 years' incarceration and ordered Appellant to pay the costs of prosecution.[2]  We affirm.

---

[1] 18 Pa.C.S.A. §§ 2702(a)(3), 5101, 5104, and 3503(b)(1)(i), respectively.

[2] Appellant was found ineligible for the recidivism risk reduction incentive program but was awarded credit for time served from February 3, 2023 to February 17, 2023, and from March 20, 2024 to June 13, 2024.  Sentencing Order, 6/18/24.

The record reveals that on February 3, 2023, Chief Deputy Noah Cline ("Chief Deputy Cline"), Deputy Wilfred J. Blosser ("Deputy Blosser"), Deputy Andrew Bustin ("Deputy Bustin") and several other deputies from the Perry County Sheriff's Office, as well as Trooper Christopher Fritz ("Trooper Fritz") and Corporal Shane Howell from the Pennsylvania State Police arrived at Appellant's residence in Carroll Township, Perry County, Pennsylvania to evict Appellant and his family from the residence. Affidavit of Probable Cause, 2/22/23, at 1. The trial court summarized Appellant's encounter with law enforcement as follows:

> from the moment Deputy Blosser attempted to open the gate to the property, [Appellant] began yelling and acting extremely irate. As Deputy Blosser continued to attempt to open the gate to the residence, Chief Deputy Cline requested Deputy Blosser to grab ahold of Appellant if he could, and at that point, Appellant began to turn in an attempt to retreat back into the residence. While this was occurring, [Trooper Fritz], along with [Deputy Bustin] deployed their tasers, which were unsuccessful in stopping Appellant from retreating [] into the residence. At that point, Deputy Blosser and Chief Deputy Cline fell with Appellant into the doorway and[,] in that moment, Appellant attempted to strike Deputy Blosser with blows from his right hand. Appellant was flailing, striking[,] and throwing blows. When Deputy Blosser attempted to grab Appellant's legs, [Appellant] kicked Deputy Blosser multiple times causing bruising and abrasions. In the midst of this, Trooper Fritz testified that Appellant yelled out a name that seemed to be one of the dogs' [names] and[,] ultimately, Trooper Fritz was bitten in the leg by [a] dog.

Trial Court Opinion, 9/6/24, at 2-3 (record citations omitted).

On May 8, 2023, Appellant was charged with the aforementioned criminal offenses, as well as 28 counts of persons not to possess, use,

manufacture, control, sell, or transfer firearms (18 Pa.C.S.A. § 6105(a)(1)), a third count of aggravated assault – bodily injury to designated individual as it related to Appellant's actions against Chief Deputy Cline (18 Pa.C.S.A. § 2702(a)(3)), and one count of public safety and penalties – attacks by dangerous dogs (3 P.S. § 459-505-A(b)).[3]  Criminal Information, 5/8/23.  On May 21, 2024, a jury convicted Appellant of two counts of aggravated assault – bodily injury to designated individual as a result of Appellant's actions involving Deputy Blosser and Trooper Fritz, and one count each of obstructing administration of law or other government function, resisting arrest or other law enforcement, and criminal trespass – defiant trespasser.  Verdict, 5/21/24.  The jury found Appellant not guilty of the remaining count of aggravated assault – bodily injury (Chief Deputy Cline) and public safety and penalties – attacks by dangerous dogs.  *Id.*

On June 13, 2024, the trial court sentenced Appellant to 12 to 24 months' incarceration for each of his two aggravated assault convictions, 3 to 12 months' incarceration for his obstructing administration of law or other government function conviction, 1 to 12 months' incarceration for his resisting arrest or other law enforcement conviction, and payment of costs of

___

[3] On May 21, 2024, the trial court granted the Commonwealth's motion to withdraw the 28 charges of persons not to possess, use, manufacture, control, sell, or transfer firearms.    Trial Court Order, 5/21/24.

prosecution for his criminal trespass – defiant trespasser conviction.[4]  The aggregate sentence was 2 years and 4 months to 6 years' incarceration.  This appeal followed.[5]

Appellant raises the following issues for our review:

[1.]  Whether the guilty verdicts for two counts of aggravated assault, [and one count each of] obstruction of administration of [law or other government function], resisting arrest[,] and [criminal trespass - ]defiant trespasser were in error as the evidence presented at trial was insufficient to prove beyond a reasonable doubt an essential element of the offense[s]; specifically, [Appellant] intended to do bodily injury to [the law enforcement] officers present?

[2.]  Whether the guilty verdict on obstruction of [administration of] law or other governmental function was in error as the evidence presented at trial was insufficient to prove beyond a reasonable doubt that [Appellant] intentional[ly] obstructed the administration of law by force, violence[,] or physical [interference?]

[3.]  Whether the guilty verdict on resisting arrest was in error as the evidence presented at trial was insufficient to prove beyond a reasonable doubt that [Appellant] intentionally prevented a public servant from effecting a lawful arrest or discharging any other du[t]y which created a substantial risk of bodily injury to the public servant?

[4.]  Whether the guilty verdict on [criminal trespass - ]defiant trespass[er] was in error as the evidence presented at trial was insufficient to prove beyond a reasonable doubt that [Appellant] intentionally remained in his [house] as to which

---

[4] The trial court also ordered Appellant to pay the costs of prosecution for the aforementioned criminal convictions in which terms of incarceration were imposed.

[5] Both Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

> notice against trespass was given to him by actual communication?

Appellant's Brief at 8 (extraneous capitalization omitted).

Appellant's issues, *in toto*, raise a challenge to the sufficiency of the evidence to support his convictions for which our standard and scope of review are well-settled.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the [fact-finder,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Reed*, 216 A.3d 1114, 1119 (Pa. Super. 2019).

In order to convict a defendant of aggravated assault under Section 2702(a)(3) of the Crimes Code, the Commonwealth must show that the defendant "attempt[ed] to cause or intentionally or knowingly cause[d] bodily injury to[, *inter alia*, a police officer, sheriff, or deputy sheriff] in the performance of duty[.]" 18 Pa.C.S.A. § 2702(a)(3) and (c); *Commonwealth v. Rahman*, 75 A.3d 497, 501 (Pa. Super. 2013). The term "bodily injury" is

- 5 -

defined as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301. Section 302 defines the terms "intentionally" and "knowingly" as:

(1) A person acts intentionally with respect to a material element of an offense when:

(i) if the element involves the nature of his [or her] conduct or a result thereof, it is his [or her] conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he [or she] is aware of the existence of such circumstances or he [or she] believes or hopes that they exist.

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his [or her] conduct or the attendant circumstances, he [or she] is aware that his [or her] conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his[ or her] conduct, he [or she] is aware that it is practically certain that his [or her] conduct will cause such a result.

18 Pa.C.S.A. § 302(b)(1) and (b)(2).

Section 5101 of the Crimes Code defines the offense of obstructing administration of law or other governmental function as:

A person commits a misdemeanor of the second degree if he [or she] intentionally obstructs, impairs[,] or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

18 Pa.C.S.A. § 5101; *see also Commonwealth v. Snyder*, 60 A.3d 165, 175 (Pa. Super. 2013) (stating, Section 5101 "is designed to cover a broad range of behavior that impedes or defeats the operation of government" (citation and original quotation marks omitted)), *appeal denied*, 70 A.3d 811 (Pa. 2013). The offense "consists of two elements: 1) an intent to obstruct the administration of law; and 2) an act of 'affirmative interference with governmental functions.'" *Commonwealth v. Palchanes*, 224 A.3d 58, 60 (Pa. Super. 2019), *appeal denied*, 232 A.3d 566 (Pa. 2020). "It has been well-established that the interference need not involve physical contact with the government official as he [or she] performs his [or her] duties." *Palchanes*, 224 A.3d at 60 (citation and original quotation marks omitted).

A defendant is guilty of resisting arrest or other law enforcement "if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S.A. § 5104. "This offense requires proof that a public servant was effecting a lawful arrest or discharging a legal duty other than arrest, which the defendant intended to prevent." *Commonwealth v. Cahill*, 324 A.3d 516, 528 (Pa. Super. 2024) (citation and quotation marks omitted). "The Commonwealth does not need to establish actual injury. Instead, it may prove either that the defendant's actions created a substantial risk of [] bodily injury or that the defendant

employed means justifying or requiring substantial force to overcome the resistance." **Id.** (citation omitted).

Finally, a defendant is guilty of criminal trespass – defiant trespasser "if, knowing that he [or she] is not licensed or privileged to do so, he [or she] enters or remains in any place as to which notice against trespass is given by[, *inter alia*,] actual communication to the actor[.]" 18 Pa.C.S.A. § 3503(b)(1)(i). "[T]he Commonwealth must prove that a defendant (1) entered or remained upon property without a right to do so; (2) while knowing that he [or she] had no license or privilege to be on the property; and (3) after receiving direct or indirect notice against trespass." **Commonwealth v. Bradley**, 232 A.3d 747, 758 (Pa. Super. 2020).

Here, Appellant argues that the Commonwealth presented insufficient evidence of the *mens rea* element necessary to prove his convictions of the aforementioned criminal offenses. Appellant's Brief at 12-20. Appellant's argument hinges on his belief that the eviction proceeding involving him and his wife had been stayed by "paperwork" they filed in federal court. **Id.** at 12 (stating, Appellant "was under the belief that the documents that he [] filed in [f]ederal [c]ourt stayed the eviction proceeding"). Appellant challenges his aggravated assault convictions based upon his belief that the eviction proceeding had been stayed and, therefore, "he did not knowingly, intentionally[,] or recklessly cause bodily injury to [the law enforcement

officers]."[6] *Id.* at 14-15. Appellant argues that "his actions were justified because he reasonably believed [he] was protecting himself against unlawful and deadly force by [law enforcement] officers." *Id.* at 15. Similarly, Appellant asserts that he "did not intentionally obstruct the administration of [the eviction process but, rather, was] attempting to address the issue with [the] filings in [f]ederal [c]ourt." *Id.* at 16. Appellant contends, further, that he did not intend to prevent the law enforcement officers from effectuating the eviction because he believed the eviction was stayed. *Id.* at 17. Finally, Appellant argues that he believed the eviction proceeding had been stayed and, as such, he had the right to remain in the house. *Id.* at 19.

The trial court found there was sufficient evidence to support Appellant's convictions of aggravated assault, obstructing administration of law or other government function, and resisting arrest.[7] Trial Court Opinion, 9/6/24, at 2-3 (record citations omitted). Specifically, the trial court found there was sufficient evidence to demonstrate that, to stop law enforcement officers from evicting him and his wife from the residence, Appellant engaged in a physical altercation with the law enforcement officers, and enlisted the aid of his dogs,

---

[6] The *mens rea* of "recklessness" is not an element of aggravated assault under Section 2702(a)(3). *See* 18 Pa.C.S.A. § 2702(a)(3).

[7] In its Rule 1925(a) opinion, the trial court did not address the sufficiency of the evidence to support Appellant's conviction of criminal trespass – defiant trespasser. *See generally*, Trial Court Opinion, 9/6/24, at 1-7.

with the intent to cause bodily injury to the law enforcement officers. *Id.* at 3.

At trial, Deputy Bustin testified that, on January 13, 2023, he served a copy of the *writ* of possession for the residence on Appellant's wife, who accepted service for herself, personally, and on behalf of Appellant. N.T., 5/20/24, at 23; *see also* Commonwealth Exhibit 1. Deputy Bustin informed Appellant and his wife that they had 10 days to vacate the property. N.T., 5/20/24, at 26. Deputy Bustin and another deputy returned to the property on February 1, 2023, and, upon finding Appellant still present on the property, informed him that he had until February 3, 2023, to vacate the property. *Id.* at 27. Deputy Bustin testified that, when he returned to the property on February 3, 2023, Appellant was "very hostile" and would not let the law enforcement officers enter the property. *Id.* at 28. Deputy Bustin stated that, when Appellant attempted to retreat into the residence, he deployed his taser device on Appellant. *Id.* The taser was ineffective in stopping Appellant, but he was subsequently taken into custody by Deputy Blosser and Chief Deputy Cline. *Id.* On cross-examination, Deputy Bustin agreed that Appellant handed "some documents" to the law enforcement officers before he was taken into custody. *Id.* at 29.

Chief Deputy Cline testified that, when law enforcement officers arrived at the property on February 3, 2023, Deputy Blosser attempted to open a gate to gain access to the property when Appellant came out of the house, bringing with him three large dogs. *Id.* at 36. Chief Deputy Cline described Appellant

as "yelling and screaming" to the point where he could not have a conversation with Appellant. *Id.* at 36-37. Chief Deputy Cline stated that he and Deputy Blosser attempted to take Appellant into custody but, when Deputy Blosser tried to restrain Appellant, Appellant retreated towards the house. *Id.* at 37. Chief Deputy Cline testified that he and Deputy Blosser were able to restrain Appellant in the doorway of the residence where the three individuals fell to the ground and a physical altercation ensued. *Id.* While Chief Deputy Cline attempted to handcuff Appellant, Appellant was "flailing" and punched Chief Deputy Cline in the cheek. *Id.* at 38. On cross-examination, Chief Deputy Cline agreed that Appellant "threw some documents [at the law enforcement officers] before this rodeo took off." *Id.* at 40.

Trooper Fritz testified that when law enforcement officers attempted to gain entry to the property by opening the gate, Appellant "came down, tried to slam the gate[,] and refuse[d] us entry." *Id.* at 50. Trooper Fritz stated that, when the law enforcement officers opened the gate, Appellant got mad and attempted to retreat into the residence. *Id.* At this point, Trooper Fritz, along with Deputy Bustin, attempted to deploy their taser devices to stop Appellant from retreating into the house, but the deployment of the taser devices was unsuccessful in stopping Appellant. *Id.* After failing to taser Appellant, the law enforcement officers, according to Trooper Fritz, "rushed" Appellant, and Deputy Blosser and Chief Deputy Cline wrestled Appellant to the ground. *Id.* Trooper Fritz stated that Appellant "was resisting" by punching and kicking. *Id.* at 50-51. Trooper Fritz testified that, while he was

attempting to help handcuff Appellant, Appellant "yelled a name – I don't know the name – like do something, get him, get him" and thereafter one of Appellant's dogs bit Trooper Fritz in the back of his leg. *Id.* at 51. Trooper Fritz stated that "it was fair to assume [that the name Appellant yelled belonged to] one of the dogs" because no one was in the immediate proximity except for Appellant's wife "who was [] videotaping and yelling and screaming[.]" *Id.* at 52.

Deputy Blosser testified that, upon his arrival, he attempted to gain access to the property by opening the gate. *Id.* at 59. When he attempted to open the gate, Appellant emerged from the residence yelling and ordering the law enforcement officers off the property. *Id.* at 60. Deputy Blosser also testified that Appellant released several dogs that "seemed to be pretty aggressive" and the dogs charged the gate barking at the law enforcement officers. *Id.* Deputy Blosser described Appellant as "very belligerent, boisterous, and irate." *Id.* Deputy Blosser stated that Appellant threw some documents at the law enforcement officers, but he did not review or take possession of the documents. *Id.* Deputy Blosser testified that he was not aware of any court order that precluded Appellant's eviction from the residence. *Id.* at 61. Deputy Blosser explained that, when he attempted to open the gate a second time, Appellant became irate, started screaming at him to close the gate, and charged towards the gate. *Id.* at 62. According to Deputy Blosser, Appellant attempted to counter the efforts to open the gate. *Id.* Deputy Blosser attempted to take Appellant into custody but was

unsuccessful, as Appellant violently jerked away and made a swinging motion towards Deputy Blosser. ***Id.*** at 63. Two law enforcement officers attempted to taser Appellant but were unsuccessful. ***Id.***

In his retreat towards the residence, Appellant stumbled on the porch stairs and "went down on his knee[.]" ***Id.*** Deputy Blosser again attempted to apprehend Appellant by grabbing his shirt, but the shirt "ripped apart, pulling away from his body." ***Id.*** At this time, Appellant "spun around[ and] tried to take another swing at [Deputy Blosser] with his fist." ***Id.*** Both Appellant and Deputy Blosser lost their balance and fell into the doorway of the residence with Deputy Blosser landing on top of Appellant. ***Id.*** at 64. Appellant was "trying to strike [Deputy Blosser] with blows from his right hand." ***Id.*** As Deputy Blosser attempted to handcuff Appellant, Appellant "continued screaming, cursing, flailing, trying to strike anybody and everybody that was in the area." ***Id.*** Deputy Blosser stated that, during the apprehension of Appellant, Appellant kicked him several times with his work boots and caused bruising and abrasions up and down his shins, as well as some "light swelling to [his] lower legs." ***Id.*** at 65. Deputy Blosser explained that he deployed his taser device in dry stun mode on Appellant three times before Appellant stopped kicking and he was able to handcuff Appellant.[8] ***Id.***

_____

[8] Deputy Blosser described the dry stun mode of a taser device as "like a cattle prod." N.T., 5/20/24, at 67. An arc of current passes through the area of contact causing the individual pain. ***Id.*** When a taser is used in dry stun mode, it is a "pain compliance device at this time" without the firing of the taser probes into the skin. ***Id.***

at 66. Deputy Blosser was unaware of any stay order entered by a federal court. *Id.* at 75.

Appellant's wife testified that she was aware of the eviction proceeding prior to February 3, 2023, because she filed "paperwork" with the federal court system regarding the eviction on February 2, 2023. *Id.* at 82. Mrs. Foster stated that a copy of the "paperwork" was handed to the law enforcement officers when they arrived at the gate to the residence. *Id.* at 86. Mrs. Foster stated that, based upon the documents she received from the federal court, she believed she had the right to remain in the residence. *Id.* at 93. On cross-examination, however, Mrs. Foster admitted that the documents she received from the federal court were not signed by a federal district judge and there was no court order stating that she and her husband were entitled to remain in the residence. *Id.* at 103.

In viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, our review confirms that there was sufficient evidence to establish that Appellant had the requisite intent necessary to support his convictions. Witness testimony established that, upon being subdued by the law enforcement officers, Appellant resisted arrest by punching and kicking law enforcement officers and commanding his dog to attack the law enforcement officers. Both law enforcement officers sustained bodily injury in the form of abrasions and scraps, leg swelling, and animal bites that required medical attention. Trial testimony further established that Appellant attempted to obstruct the eviction process by releasing his dogs to

charge the law enforcement officers while they attempted to gain access to the property *via* a gate, and Appellant fought to keep the gate to the property closed while law enforcement officers attempted to gain access. Similarly, Appellant's demeanor was one of hostility and combativeness towards the law enforcement officers, with demands that the law enforcement officers not enter the property in order to effectuate the eviction proceedings. Finally, while Appellant and his wife may have mistakenly believed their efforts in filing paperwork in federal court resulted in a stay of the eviction proceeding, a mistake of law does not serve as a defense. ***See Commonwealth v. Bradley***, 232 A.3d 747, 759 (Pa. 2020) (stating, "mistake of law is not a defense[;]" if mistake of law were accepted as providing grounds for relief, "it would provide an absolute defense to any prosecution where a defendant asserts a good faith, yet erroneous, understanding of the law"). Appellant remained on the property after being served with a *writ* of possession informing him that he must vacate the premises. He continued to remain at the property after he received a verbal warning to vacate the property two days prior to the incident. Taken together, these circumstances constituted ample proof that Appellant remained on the property with the requisite intent of preventing his eviction by use of force, resulting in injury. As such, in viewing the evidence in the light most favorable to the Commonwealth, we conclude there was sufficient evidence to permit the jury, as fact-finder, to conclude that Appellant was guilty of the offenses with which he was convicted. Therefore, Appellant's sufficiency claims are without merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/10/2025