J-S03024-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JEFFERY LINCOLN HUNTER | : | |
| | : | |
| Appellant | : | No. 676 MDA 2025 |

Appeal from the Judgment of Sentence Entered April 22, 2025
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0000610-2024

BEFORE:  DUBOW, J., BECK, J., and LANE, J.

MEMORANDUM BY BECK, J.:                    **FILED: APRIL 17, 2026**

Jeffrey Lincoln Hunter ("Hunter") appeals from the judgment of sentence entered by the Lycoming County Court of Common Pleas ("trial court") after the court convicted him of driving under the influence of alcohol ("DUI") – incapable of safely driving, DUI – high rate of alcohol, and the summary offenses of period for requiring lighted lamps and careless driving.[1] On appeal, Hunter challenges the trial court's denial of his suppression motion, asserting that police lacked probable cause to conduct the traffic stop that ultimately led to his arrest.  Because we conclude that the trial court did not abuse its discretion in denying his suppression motion, we affirm.

---

[1]  75 Pa.C.S. §§ 3802(a)(1), 3802(b), 4302(a)(1), 3714(a).

On July 29, 2023, Trooper Ernest Capobianco of the Pennsylvania State Police was on patrol with his partner around 11:40 p.m. in Williamsport, Pennsylvania. At the hearing on Hunter's suppression motion, Trooper Capobianco testified that they were traveling west on West Fourth Street near Poplar Street when they passed Hunter's vehicle traveling north on Seneca Avenue that was about to turn right and head east on West Fourth Street. At that moment, Trooper Capobianco observed that the vehicle's headlights were illuminated. Trooper Capobianco stated that they proceeded west until he stopped at a red light at the intersection of Poplar Street and West Fourth Street. Trooper Capobianco explained that he looked at his sideview mirror and saw that the taillights on Hunter's vehicle were not illuminated. Trooper Capobianco immediately made a three-point turn and began following Hunter's vehicle with the intention of conducting a traffic stop. Trooper Capobianco testified that when he began following Hunter's vehicle, his taillights were illuminated. The mobile video recorder ("MVR") footage from Trooper Capobianco's patrol vehicle shows that the taillights were illuminated as the trooper and his partner pursued the vehicle.

Trooper Capobianco conducted a traffic stop of Hunter's vehicle based on his belief that Hunter was operating the vehicle without its taillights illuminated for a period of time. He subsequently placed Hunter under arrest for suspicion of DUI and took him to the hospital for a chemical test of his

blood. The results of that test showed that Hunter's blood alcohol concentration was .154%.

On October 12, 2024, Hunter filed a pretrial motion to suppress the evidence police obtained from the traffic stop. Hunter averred that Trooper Capobianco lacked probable cause to conduct a traffic stop based on Hunter operating a vehicle without its taillights illuminated at night because the MVR footage from the trooper's vehicle showed that the taillights on Hunter's vehicle were illuminated as they were following him. *See* Suppression Motion, 10/12/2024, ¶¶ 14-20. On November 18, 2024, the trial court held a hearing on Hunter's suppression motion. The court denied the motion the following day.

On January 21, 2025, the trial court held a bench trial at the conclusion of which it found Hunter guilty of the above-referenced crimes. On April 22, 2025, the trial court sentenced Hunter to sixty days to six months of incarceration and to pay $1,050.00 in fines.[2] Hunter timely appealed to this Court. He presents the following issue for review:

> Whether the trial court erred in denying [Hunter]'s motion to suppress evidence when [his] vehicle was illegally stopped without probable cause in violation of his rights under Article I Section 8 of the Pennsylvania Constitution and The Fourth Amendment to the United States Constitution.

Hunter's Brief at 4.

_____

[2] The trial court granted Hunter's post-sentence motion for bail pending appeal.

- 3 -

Hunter argues that the trial court abused its discretion in denying his suppression motion. *See id.* at 12-17. He asserts that the record does not "support the trial court's conclusion that the taillights on [Hunter]'s vehicle were not illuminated as required by the Vehicle Code." *Id.* at 15. Hunter contends that the MVR footage contradicts Trooper Capobianco's assertion that his vehicle's taillights were not illuminated, as the MVR footage shows that the taillights were, in fact, illuminated and that the trooper did not testify that he "witnessed the taillights go from unilluminated to illuminated." *Id.* at 15-16. He argues that the "only reasonable conclusion that can be reached based upon the evidence of record … is that it is more likely than not the [t]rooper was mistaken when he supposedly observed [Hunter]'s taillights to be nonfunctional when looking through his side[]view mirror." *Id.* at 16.

Our standard of review for the denial of a suppression motion is well settled:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

***Commonwealth v. Carey***, 249 A.3d 1217, 1223 (Pa. Super. 2021).

Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution protect individuals from unreasonable searches and seizures.[3] ***Int. of T.W.***, 261 A.3d 409, 416 (Pa. 2021). A traffic stop is a seizure for constitutional purposes. ***Commonwealth v. Malloy***, 257 A.3d 142, 147-48 (Pa. Super. 2021). The quantum of cause necessary to stop a vehicle depends on whether the stop can "serve a stated investigatory purpose." ***Id.*** at 148. Where a stop requires further investigation, e.g., a stop for suspected DUI, an officer needs only

---

[3] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, paper, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularity describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. Article I, Section 8 of the Pennsylvania Constitution states:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizure, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. CONST. art. I, § 8.

reasonable suspicion to initiate a traffic stop. ***Commonwealth v. Walls***, 206 A.3d 537, 541 (Pa. Super. 2019). Where further investigation during a traffic stop would provide no additional information regarding whether a Vehicle Code violation has occurred, "e.g., a stop for an obscured license plate," an officer needs probable cause. ***Commonwealth v. Cahill***, 324 A.3d 516, 523 (Pa. Super. 2024).

In this case, there is no dispute that Trooper Capobianco needed probable cause to stop Hunter for failing to have his taillights illuminated at night. ***See*** Hunter's Brief at 13; Commonwealth's Brief at 2. "Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." ***Commonwealth v. Saunders***, 326 A.3d 888, 897 (Pa. 2024) (quotation marks and citations omitted). Probable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference. ***Cahill***, 324 A.3d at 523 (citation omitted).

Trooper Capobianco stopped Hunter for violating section 4302 of Pennsylvania's Vehicle Code. ***See*** N.T., 11/18/2024, at 12; ***see also*** Affidavit of Probable Cause, 2/8/2024, at 1. Section 4302 provides, in pertinent part, as follows:

> **(a) General rule.--**The operator of a vehicle upon a highway shall display the lighted head lamps and other lamps and illuminating devices required under this chapter for different

- 6 -

classes of vehicles, subject to exceptions with respect to parked vehicles, at the following times:

(1) Between sunset and sunrise.

75 Pa.C.S. § 4302(a)(1). Taillights are included among a vehicle's illuminating devices that must be illuminated at night. ***See id.***; ***see also*** 75 Pa.C.S. § 4303(b).

In denying Hunter's suppression motion, the trial court explained:

> The dashcam images confirm that, during the pursuit of [Hunter]'s vehicle, the [taillights] lights were illuminated.
>
> The affidavit prepared by Trooper Capobianco alleges a statement by [Hunter] that he "was unaware that he pulled out from Seneca Ave. with his taillights off. He related that he must have had his daytime running lights on." Although barely audible, the dashcam recording confirms that Trooper Capobianco has a conversation with [Hunter] on the subject of his taillights. That recording corroborates the testimony of Trooper Capobianco that the cause for the vehicle stop of [Hunter] was Trooper Capobianco's belief that [Hunter] was operating a motor vehicle long after dark, with his [taillights] turned off, in violation of 75 Pa.C.S. § 4302(a)(1).
>
> It is impossible … to speculate about the length of time that [Hunter] was operating his vehicle with his taillights turned off. It is entirely possible that he started to operate his vehicle shortly before he was seen by Trooper Capobianco. It is obvious that, very shortly after Trooper Capobianco observed that [Hunter], and well before the stop, … engaged his taillights. Thus, the question presented by [Hunter's suppression motion] is, where a law enforcement officer observes a vehicle operated at night with its taillights turned off, and then observes the taillights turned on almost immediately thereafter, does the officer have probable cause to stop the vehicle for violation of 75 Pa.C.S. § 4302(a)(1), however brief in duration. The holding of the [c]ourt is that the officer does have probable cause to conduct a stop, under those facts.

Trial Court Opinion, 11/19/2024, at 2 (typographical errors corrected).

Trooper Capobianco testified at the suppression hearing that he stopped Hunter because he observed him through his sideview mirror driving eastbound on West Fourth Street in Williamsport without his vehicle's taillights illuminated.  N.T., 11/18/2024, at 4; *see also* Affidavit of Probable Cause, 2/8/2024, at 1.  He stated that when he first saw Hunter's vehicle it looked like its headlights were illuminated, but when he observed the vehicle's taillights through his sideview mirror they were not illuminated.  N.T., 11/18/2024, at 10.  The trooper explained: "It's commonly seen when -- at night I see this a lot.  Daytime running lights are on, it looks that the headlights are illuminated.  It's showing some light on the roadway, but then the back end will be completely blacked out."  *Id.* at 12.

Trooper Capobianco did acknowledge in his testimony that the MVR video footage showed that Hunter's taillights were illuminated by the time the trooper had executed a three-point turn, began pursuing Hunter, and activated the dashboard camera.  *Id.* at 10-11.  Trooper Capobianco further testified, however, that he had a conversation with Hunter during the traffic stop:

> At that point, I said -- we were conversating, I asked him, did you have your daytime running lights on because he had no taillights, and he proceeded to reply to me that he must have had them on and he turned his [headlights and taillights] on.  So he had his lights on at time of the stop, but he was admitting to me he had to turn them on.

*Id.* at 14-15.  Our review of the MVR footage confirms this testimony.  In the video, Trooper Capobianco is showing having a conversation with Hunter

- 8 -

about Hunter's taillights about Mr. Hunter's taillights, during which the trooper said to Hunter, "you had no taillights on," and Hunter replied, "okay I might not have turned my lights …," at which time Trooper Capobianco injected, "lights on right away," and Hunter responded "yeah." ***Id.***, Commonwealth's Ex. 2 at 2:09-2:30.

Thus, the record reflects that Trooper Capobianco believed that Hunter was operating his vehicle in violation of the Vehicle Code because he did not have his taillights illuminated at night. The trial court found the trooper's testimony in this respect credible. ***See*** Trial Court Opinion, 11/19/2024, at 2. Although the MVR footage shows Hunter's taillights illuminated by the time Trooper Capobianco was pursuing him, there is no basis for us to conclude that Hunter did not turn his headlights on (thus illuminating his taillights) in the time the trooper executed a three-point turn and activated his dashboard camera. Contrary to Hunter's argument, the MVR footage corroborates Trooper Capobianco's testimony that he initially observed Hunter's vehicle without its taillights illuminated, as the trooper and Hunter had a conversation about the taillights during which Hunter admitted he may not have turned his headlights on "right away." ***See*** Commonwealth's Ex. 2 at 2:09-2:30. Tellingly, Hunter's argument entirely ignores this conversation between Trooper Capobianco and Hunter. ***See*** Hunter's Brief at 12-17.

The record therefore supports the trial court's finding that Trooper Capobianco observed Hunter operating his vehicle at night without his

taillights illuminated and that the trooper thus had probable cause to conduct a traffic stop of Hunter for violating the Vehicle Code. ***See*** 75 Pa.C.S. § 4302(a)(1). As such, we conclude that the trial court did not abuse its discretion in denying Hunter's suppression motion.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/17/2026